IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN M. RUFFIN, #K80541, )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>WEXFORD HEALTH SOURCE, INC., )<br>ILLINOIS DEPARTMENT OF )<br>CORRECTIONS (IDOC), )<br>LATOYA HUGHES, )<br>CRYSTAL CROW, )<br>DR. LARSON, )<br>C/O JAMERSON, )<br>KIMBERLY HVARRE, )<br>KELSEY/KERLEY,[1] )<br>and JON HALL )<br>)<br>**Defendants.** ) | Case No. 25-cv-00336-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff John Ruffin, an inmate of the Illinois Department of Corrections currently incarcerated at Dixon Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his rights at Big Muddy River Correctional Center under the Eighth Amendment, Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, Rehabilitation Act (Rehab Act), 29 U.S.C. §§ 794-94e, and Civil Rights Remedies Restoration Act (Restoration Act), 775 ILCS 60/1, *et seq*. The Complaint is before the Court for review under 28 U.S.C. § 1915A, which requires screening and dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant.

---

[1] Plaintiff refers to the health care unit (HCU) administrator as "Kelsey" and "Kerley" interchangeably. For ease of reference, the Court will refer to this individual as "HCU Administrator Kelsey" herein.

1

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 12-23): Plaintiff's claims arose at Big Muddy River Correctional Center between February 28, 2024 and November 5, 2024.

#### *ADA Cell*

Before arriving at Big Muddy, Plaintiff suffered a cervical spine fracture that necessitated the use of a wheelchair to access prison programs and services and an ADA-compliant cell to avoid injury. *Id*. at ¶¶ 13-15. He was placed in a single-person cell that violated the ADA. *Id*. at ¶ 18.

Officer Jamerson moved a non-disabled inmate into the cell in April 2024, making it more difficult for Plaintiff to access the bunk, sink, desk, and toilet. *Id*. at ¶¶ 21-22. The same day, Plaintiff submitted a written request for reasonable accommodations, including a permit for a single cell, to Warden Kimberly Hvarre, Acting Warden Crow, ADA Coordinator Jon Hall, and Officer Jamerson. *Id*. at ¶ 23. Hvarre and Hall were already aware that his cell was not ADA-compliant because they toured the facility with Equipment for Equality (EFE) officers and lawyers to identify ADA compliance issues one month earlier. *Id*. at ¶¶ 16-20. The EFE prepared a report itemizing the ADA violations for Big Muddy officials and forwarded a copy to Acting IDOC Director Latoya Hughes. *Id*. No action was taken to address the issues. *Id*. at ¶ 19.

Hvarre acknowledged Plaintiff's letter in April and promised to address his concerns on May 2, 2024. *Id*. at ¶ 24. On May 8, 2024, Hall issued a memo stating that there was nothing wrong with placing a non-disabled inmate in the cell but acknowledged the difficulties it presented. *Id*. at ¶ 25. Crow spoke with Plaintiff at his cell on May 13, 2024. *Id*. at ¶ 26. Plaintiff complained of space limitations and related difficulties transferring from his wheelchair to the bunk, desk, and toilet. *Id*.

On May 14, 2024, Plaintiff suffered a catastrophic fall while transferring from his bunk to his wheelchair and fractured his elbow in two places. *Id*. at ¶ 27. Officer Jamerson moved Plaintiff's cellmate to another cell on May 17, 2024. *Id*. at ¶ 28.

Jamerson again moved an inmate into Plaintiff's cell on September 15, 2024. The same day, Plaintiff fell from his wheelchair onto the concrete floor and suffered additional injuries and pain. *Id*. at ¶¶ 32-34. This was right after Kelsey responded to Plaintiff's concerns about overcrowding by assuring Plaintiff there was nothing he could do until Plaintiff was assigned a cellmate. *Id*. Kelsey returned to Plaintiff's cell to discuss Plaintiff's concerns about the ADA compliance issues on September 19, 2024, and Plaintiff physically demonstrated his difficulties moving around the cell. *Id*. at ¶ 35.

Plaintiff faults Hughes, Crow, Hvarre, Kelsey, Jamerson, and Hall for failing to accommodate his disabilities when they failed to house him in a single-person, ADA-compliant cell. *Id*. at ¶ 39.

### *Inadequate Medical Care*

Medical Director Dr. Larson and HCU Administrator Kelsey were both aware of Plaintiff's initial injuries, but delayed treatment. *Id*. Larson examined Plaintiff's elbow and ordered x-rays for the injuries he sustained on May 14, 2024 at an appointment on May 30, 2024. He waited until June 10, 2024 to inform him of two elbow fractures. *Id*. at ¶ 29. Dr. Larson referred Plaintiff to an orthopedic surgeon for potential surgery, but took no steps to expedite the referral. *Id*. at ¶¶ 30-31. When Plaintiff complained of persistent, severe elbow pain on June 25, 2024 and September 9, 2024, Dr. Larson would not expedite the referral. *Id*. at ¶¶ 42-43.

Plaintiff's injuries from his second fall on September 15, 2024 were not examined by a nurse practitioner until October 7, 2024. *Id*. at ¶¶ 44-45.

Plaintiff was finally sent to an orthopedic specialist on October 24, 2024, who recommended surgery without delay. *Id*. at ¶ 46.  Surgery was scheduled for November 22, 2024.  *Id*. at ¶ 47.  However, Larson and Kelsey failed to place a transfer and/or medical hold on Plaintiff, and he transferred on November 4, 2024, before undergoing surgery.  *Id*. at ¶ 48.

On November 12, 2024, after Plaintiff arrived at Dixon Correctional Center, Nurse Tuelle met with him to discuss his severe left elbow pain and need for surgery.  *Id*. at ¶ 49.  Tuelle explained that he was still scheduled for surgery, but a writ would not be issued because Larson and Kelsey failed to place the necessary holds on him prior to his transfer.  Tuelle separately requested a referral to a nearby surgical center, Northwestern Orthopedic Clinic.  *Id*.

### *Inadequate Dental Care*

Big Muddy was required to have a full-time dentist on staff pursuant to the terms of a consent decree in *Lippert*, a class action lawsuit involving conditions of confinement in IDOC. Wexford, Hughes, Crow, Larson, and Kelsey were all aware of this requirement, but failed to ensure adequate staffing.  Plaintiff submitted numerous requests for dental cleanings, fillings, and denture replacement between February and November 2024.  However, he received no treatment. After he transferred to Dixon CC, a full-time dentist immediately examined his teeth, filled his cavities, ordered a partial denture, and added him to the waiting list for a dental cleaning.  *Id*. at ¶¶ 55-60.

### **Preliminary Dismissals**

Plaintiff mentions the following individuals in the statement of claim but does not identify them as defendants: Nurse Tuelle and a nurse practitioner.  The Court will not treat these individuals as defendants, and all claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties").

**Discussion**

Based on the allegations, the Court designates the following claims in the *pro se* Complaint:

**Count 1:** ADA claim against IDOC and Hughes (official capacity) for failing to accommodate Plaintiff's disability when they denied him access to a single-person, ADA-compliant cell and caused him to sustain injuries when he fell from his wheelchair on or around May 14, 2024 and September 15, 2024.

**Count 2:** Rehab Act claim against IDOC and Hughes (official capacity) for failing to accommodate Plaintiff's disability when they denied him access to a single-person, ADA-compliant cell and caused him to sustain injuries when he fell from his wheelchair on or around May 14, 2024 and September 15, 2024.

**Count 3:** Illinois state law claim under the Restoration Act against IDOC and Hughes (official capacity) for failing to accommodate Plaintiff's disability when they denied him access to a single-person, ADA-compliant cell and caused him to sustain injuries when he fell from his wheelchair on or around May 14, 2024 and September 15, 2024.

**Count 4:** Eighth Amendment claim against Hughes, Crow, Hvarre, Hall, Kelsey, and Jamerson for subjecting Plaintiff to unconstitutional conditions of confinement by housing him in a single-person cell with a cellmate when space limitations prevented him from using his wheelchair to access the sink, bunk, desk, and/or toilet and caused him to fall and suffer serious injuries at BMRCC in May and September 2024.

**Count 5:** Eighth Amendment claim against Wexford, Larson, Kelsey, Crow, and Hughes for delaying treatment for Plaintiff's fractured elbow and causing unnecessarily prolonged pain and injury at BMRCC in 2024.

**Count 6:** Eighth Amendment claim against Wexford, Hughes, and Crow for failing to hire a full-time dentist to provide dental exams, fillings, denture replacement, and teeth cleanings at BMRCC in 2024, resulting in the denial of necessary dental care for Plaintiff.

Any other claim mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Counts 1 and 2

A plaintiff bringing a claim under the ADA, 42 U.S.C. § 12101 *et seq.*, or Rehab Act, 29 U.S.C. §§ 794–94e, must allege that (1) he is a qualified person with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was because of his disability. *Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667, 672 (7th Cir. 2012).  Here, Plaintiff alleges that his cervical spine fracture qualified him as a person with a disability and necessitated use of a single-person, ADA-compliant cell, and that without one, he was unable to safely move his wheelchair around his cell to access the toilet, desk, bunk, and sink.  He also alleges that he suffered serious injuries when he fell from his wheelchair while attempting to do so.  Based on these allegations, the ADA claim (Count 1) and Rehab Act claim (Count 2) will receive further review against the IDOC and Hughes in an official capacity.  *Id*. at 670, n. 2 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131) (proper defendant is the agency or its director (in an official capacity)).

### Count 3

Under the Illinois Civil Rights Remedies Restoration Act (Restoration Act), 775 ILCS 60/1, *et seq.*, a violation of federal discrimination statutes, such as the ADA and Rehab Act, "shall constitute a violation" of the Restoration Act.  775 ILCS 60/15.  The Restoration Act permits damages for "past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other monetary losses, and any amount that may be determined by a jury, or a court sitting without a jury." 775 ILCS 60/20.  Plaintiff's Restoration Act claim survives screening against the IDOC and Hughes, in an official capacity.

**Count 4**

The Eighth Amendment guarantees living conditions that provide a prisoner with the "minimal civilized measure of life's necessities," including food, shelter, clothing, and medical care. *Jaros*, 684 F.3d at 670 (citing *Rhoades v. Chapman*, 452 U.S. 337, 347 (1981)). The intentional or knowing denial of these necessities supports an Eighth Amendment claim. *Jaros*, 684 F.3d at 670. Plaintiff alleges that Hughes, Crow, Hvarre, Hall, Kelsey, and Jamerson denied him a cell with sufficient space to safely move around in his wheelchair, even after he complained and showed them the safety risks posed by his space limitations. They still required him to share a single-person cell with a cellmate and his property boxes. He further alleges that he suffered serious injuries when he fell in May and September 2024. On these allegations, Count 4 will receive further review against Hughes, Crow, Hvarre, Hall, Kelsey, and Jamerson.

**Count 5**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.*

Plaintiff suffered objectively serious injuries from two separate falls in May and September 2024. He sufficiently alleges that Wexford and Hughes had a policy, custom, or practice of delaying referrals to outside specialists for necessary medical treatment, and that Larson, Kelsey, and Crow carried them out by unreasonably delaying his diagnosis, treatment, and surgery. Therefore, Count 5 will proceed against these defendants.

**Count 6**

Plaintiff fails to state a viable claim for the denial of dental care. He generally blames Wexford, Hughes, and Crow for failing to provide a full-time dentist at Big Muddy, and claims that understaffing resulted in the denial of necessary treatment. However, he does not allege that he notified these defendants of any need for dental care while at Big Muddy, and does not identify anyone else he contacted with a request for dental care, when he contacted them, or how they responded. Plaintiff's only grievance that mentions dental care was filed after he transferred from Big Muddy. *See* Doc. 1, pp. 77-81. Therefore, Count 6 will be dismissed without prejudice for failure to state a claim.

**Disposition**

The Complaint (Doc. 1) survives review under 28 U.S.C. § 1915A, as follows:

- **COUNTS 1, 2,** and **3** will proceed against **ILLINOIS DEPARTMENT OF CORRECTIONS** and **LATOYA HUGHES (official capacity)**;

- **COUNT 4** will proceed against **LATOYA HUGHES, CRYSTAL CROW, KIMBERLY HVARRE, JON HALL, KERLEY/KELSEY,** and **C/O JAMERSON**; and

- **COUNT 5** will proceed against **WEXFORD HEALTH SOURCE, INC., LATOYA HUGHES, DR. LARSON, KERLEY/KELSEY,** and **CRYSTAL CROW**.

**COUNT 6** is **DISMISSED** without prejudice for failure to state a claim against **WEXFORD HEALTH SOURCE, INC., CRYSTAL CROW,** and **LATOYA HUGHES**.

The Clerk of Court shall prepare for **ALL DEFENDANTS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

**DATED: August 4, 2025**

s/ *Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**